**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

| | |
|---|---|
| JENNIFER PEAT, JEFFERSON MEIGHAN JR., : | **INDEX NO.** 12cv8230(SAS) |
| ELAN COHEN, DALLAS CARTER, GARRETT : | **ECF CASE** |
| O'CONNOR, BRENDON SULLIVAN-MONSON, : | |
| CHRISTOPHER BRANNON, ATHENA SOULES, : | |
| SAMANTHA ALLEGRA FRIERSON, ZACHARY : | **JURY TRIAL DEMANDED** |
| CUNNINGHAM, MATTHEW BOLAND, NEGESTI : | |
| CANTAVE, ELIZABETH ARCE, and OSCAR : | |
| WHELAN, : | |
| Plaintiffs, : | **COMPLAINT** |
| : | |
| - against - : | |
| : | |
| THE CITY OF NEW YORK, a municipal entity, : | |
| and "John Doe" POLICE OFFICERS 1-20, : | |
| : | |
| Defendants. | |

-----------------------------------------------------------------------X

Plaintiffs JENNIFER PEAT, JEFFERSON MEIGHAN JR., ELAN COHEN,

DALLAS CARTER, GARRETT O'CONNOR, BRENDON SULLIVAN-MONSON,

CHRISTOPHER BRANNON, ATHENA SOULES, SAMANTHA ALLEGRA

FRIERSON, ZACHARY CUNNINGHAM, MATTHEW BOLAND, NEGESTI

CANTAVE, ELIZABETH ARCE, and OSCAR WHELAN  (henceforth, unless

otherwise described, "Plaintiffs"), by their attorney, DAVID A. THOMPSON, Esq. of

STECKLOW COHEN AND THOMPSON, complaining of the defendants, respectfully

allege as follows, upon information and belief:

## I.     PRELIMINARY STATEMENT

**1.**     Plaintiffs bring this action for compensatory damages, punitive damages

and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of

their civil rights, as said rights are secured by said statutes of the Constitutions of the

State of New York and the United States.  The Plaintiffs were participants in a peaceful and law-abiding march expressing support for the Occupy Wall Street movement, and protesting the institutionalized inequality in this country that funnels almost all the nation's political power, wealth and resources to a tiny fraction of people and their corporations, and denies the vast majority of ordinary Americans their fair share.  At the intersection of 13th Street and Second Avenue in Manhattan, the Plaintiffs were trapped within a net of NYPD police officers and vehicles, and unlawfully arrested for expressing their views.

## II.  JURISDICTION

2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

3.  Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally-based claims and causes of action.

## III.  VENUE

4.  Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this district.

**IV.     JURY DEMAND**

5.      Plaintiffs respectfully demand a trial by jury of all issues in this matter

pursuant to Fed. R. Civ. P. 38(b).

**V.     THE PARTIES**

6.      At all times relevant, each of the Plaintiffs, JENNIFER PEAT,

JEFFERSON MEIGHAN JR., ELAN COHEN, DALLAS CARTER, GARRETT

O'CONNOR, BRENDON SULLIVAN-MONSON, CHRISTOPHER BRANNON,

ATHENA SOULES, SAMANTHA ALLEGRA FRIERSON, ZACHARY

CUNNINGHAM, MATTHEW BOLAND, NEGESTI CANTAVE, ELIZABETH ARCE,

and OSCAR WHELAN were citizens of the United States.

7.      Defendant THE CITY OF NEW YORK was and is a municipal

corporation duly organized and existing under and by virtue of the laws of the State of

New York.  Defendant THE CITY OF NEW YORK maintains the New York City Police

Department (the "NYPD"), a duly authorized public authority and/or police department,

authorized to perform all functions of a police department as per the applicable sections

of the New York State Criminal Procedure Law, acting under the direction and

supervision of the aforementioned municipal corporation, Defendant THE CITY OF

NEW YORK.

8.      Each and all of the acts of the Defendant "John Doe" Police Officers

alleged herein were done by said defendants while acting within the scope of their

employment by Defendant THE CITY OF NEW YORK.

9.      At all times hereinafter mentioned, the Defendant POLICE OFFICERS

JOHN DOES 1-20 were duly sworn police officers of said department and were acting

under the supervision of said department and according to their official duties. Plaintiffs sue these Defendants in both their individual and official capacities.

10.     At least thirty days have elapsed since the demand, claim or claims upon which this action is founded were presented to a director or officer of Defendant THE CITY OF NEW YORK and the CITY has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

11.     Pursuant to New York General Municipal Law § 50-e *et seq*., at least 30 days have elapsed since the service of notices of claim, and adjustment or payment thereof has been has been neglected or refused.

## VI.    FACTS COMMON TO ALL CLAIMS

12.     Occupy Wall Street (also referred to herein as "Occupy") is a popular political movement that seeks, among other things, to bring greater fairness to the way in which power and resources are shared among citizens of the United States.

13.     Occupy Wall Street consists of a large number of people nationwide who share a common consensus that American society is structured in a way that unfairly benefits the rich and powerful at the expense of ordinary people.

14.     Negative consequences of this structure include income inequality, poverty, mass imprisonment of citizens, offensive wars, environmental degradation, taxpayers paying for the mistakes of reckless corporations, and undue influence of corporations on government.

15.     Those involved with Occupy Wall Street share the belief that change is possible through peaceful protest.

**16.**     The Occupy Wall Street movement began to take action on September 17, 2011, by beginning a protest-occupation of Zuccotti Park, located in New York City's Wall Street financial district. Occupy Wall Street-related protests sprang up in many other cities throughout the United States, and the world.  A group of protestors remained at that location until November 15, 2011, when they were forcibly ejected during a 1AM police raid, accompanied by mass arrests of protestors and journalists.

**17.**     The Plaintiffs were participants in the Occupy Wall Street movement.

**18.**     September 17, 2011 in Zuccotti Park, located in New York City's Wall Street financial district.

**19.**     On the night of December 31, 2011-January 1, 2012, some participants in the Occupy Wall Street movement gathered at Zuccotti Park to show their support for the movement and its ideas.

**20.**     At approximately 12:30 AM on January 1, 2012, some of those present at Zuccotti Park embarked on a march for the purpose of expressing their support for the Occupy Wall Street movement.

**21.**     The march departed from Zuccotti Park.

**22.**     The Plaintiffs took part in this march.

**23.**     The march proceeded approximately 2.5 miles, going from Zuccotti Park to the East Village.

**24.**     Throughout the march, all participants behaved peacefully.

**25.**     The Plaintiffs took part in the march peacefully.

**26.**     The Plaintiffs respected and obeyed applicable traffic laws.

**27.**     The Plaintiffs complied with all police orders.

28.     Throughout the march, members of the NYPD, including Defendant POLICE OFFICERS JOHN DOES 1-20, accompanied the marchers.

29.     The NYPD police officers accompanying the march directed the marchers to take a route that led the march in a northerly direction on the sidewalk of Second Avenue to the intersection of 13th Street and Second Avenue.

30.     As the march reached that intersection, the police, including Defendant POLICE OFFICERS JOHN DOES 1-20, blocked the march from making further forward progress in a northerly direction on Second Avenue.

31.     As the march reached that intersection, the police, including Defendant POLICE OFFICERS JOHN DOES 1-20, blocked the sidewalk behind the marchers, so that the marchers could not return in a southerly direction down Second Avenue.

32.     The police, including Defendant POLICE OFFICERS JOHN DOES 1-20, also blocked the marchers from leaving the sidewalk by exiting into the street.

33.     Thus, the police, including Defendant POLICE OFFICERS JOHN DOES 1-20, completely prevented the marchers from dispersing.

34.     Nevertheless, one or more police officers, including Defendant POLICE OFFICERS JOHN DOES 1-20, ordered certain of the marchers to disperse.

35.     The marchers could not comply with the officers' orders to disperse because the police, including Defendant POLICE OFFICERS JOHN DOES 1-20, physically blocked them from doing so.

36.     The police arrested the marchers, including the Plaintiffs.

**37.**     One or more of the Defendant POLICE OFFICERS JOHN DOES 1-20 stated, in sum and substance, that the Plaintiffs were being arrested because they were marching.

**38.**     Upon information and belief, the police officer(s)' statement evidences the intent of the police, including Defendant POLICE OFFICERS JOHN DOES 1-20, to infringe upon Plaintiffs' lawful exercise of their First Amendment Protected rights.

**39.**      Those arrested, including the Plaintiffs, were handcuffed and taken to the 9th Precinct.

**40.**     There, the Plaintiffs were held for several hours.

**41.**     The Plaintiffs were photographed.

**42.**     The Plaintiffs were issued Desk Appearance Tickets (DATs).

**43.**     The Plaintiffs were compelled to appear in court to dispute the charges.

**44.**     The district attorney's office declined to prosecute.

**45.**     All charges were dismissed.

**46.**     As a result of the Defendant THE CITY OF NEW YORK and the Defendant "John Doe" POLICE OFFICERS' conduct, the Plaintiffs have been harmed as follows:

      A.     Plaintiffs were deprived of their liberty and freedom.

      B.     Plaintiffs were subjected to excessive force.

      C.     Plaintiffs suffered damage to their standing and reputations within their communities.

      D.     Plaintiffs suffered physical, mental, and emotional injuries.

**47.**     As a result of the foregoing, Plaintiffs have also sustained a deprivation of their constitutional rights.

48.     As a result of the foregoing, Defendants THE CITY OF NEW YORK is also liable for the conduct of the Defendant "John Doe" POLICE OFFICERS under a theory of *Respondeat Superior*.

49.     As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

50.     Plaintiffs also demand relief in the form of punitive damages against the individual Defendant "John Doe" POLICE OFFICERS as well as against the Defendant THE CITY OF NEW YORK.

## FIRST CLAIM FOR RELIEF

## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

51.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

52.     All of the aforementioned acts of the Defendant THE CITY OF NEW YORK, and the Defendant "John Doe" POLICE OFFICERS and their agents, servants and employees, were carried out under the color of state law.

53.     All of the foregoing acts by Defendants deprived Plaintiffs of federally protected rights, including, but not limited to, the right:

A.     Not to be deprived of liberty without due process of law;

B.     To be free from seizure and arrest not based upon probable cause;

C.     To freedom from being subjected to false criminal charges by the police;

D.     To freedom from excessive force being used upon them;

E.    To freedom from retaliatory prosecution;

F.    To freedom from abuse of process;

G.    To freedom of speech and expression; and

H.    To receive equal protection under the law.

54.    All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

55.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

56.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

57.    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF

## FALSE ARREST UNDER 42 U.S.C. § 1983

58.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

59.     As a result of the aforesaid conduct by the Defendant THE CITY OF NEW YORK and the Defendant "John Doe" POLICE OFFICERS, Plaintiffs were subjected to illegal, improper and false arrests by the Defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

60.     As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF

## EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983

61.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

62.     As a result of the aforesaid conduct by the Defendant THE CITY OF NEW YORK and the Defendant "John Doe" POLICE OFFICERS, Plaintiffs were unnecessarily handcuffed by the Defendant "John Doe" POLICE OFFICERS.

63.     Plaintiffs were unnecessarily manhandled, pushed, and confined.

64.     Plaintiffs were unnecessarily transported to the 9th Precinct by the Defendant "John Doe" POLICE OFFICERS.

65.     Plaintiffs were transported to One Police Plaza by the Defendant "John Doe" POLICE OFFICERS in the absence of probable cause for their arrest.

66.     The circumstances presented to the Defendant "John Doe" POLICE OFFICERS at that time did not support any of the above applications of force on Plaintiffs.

67.     Plaintiffs were subjected to excessive force by the Defendant "John Doe" POLICE OFFICERS, in violation of their rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

68.     As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

69.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

70.     The Defendant "John Doe" POLICE OFFICERS had an affirmative duty to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights.

71.     The Defendant "John Doe" POLICE OFFICERS failed to intervene on Plaintiffs' behalf in order to prevent the violation of their constitutional rights despite having had a realistic opportunity to do so.

72.     The Defendant "John Doe" POLICE OFFICERS failed to intervene on Plaintiffs' behalf in order to prevent the violation of their constitutional rights despite

having substantially contributed to the circumstances within which Plaintiffs' rights were violated by The Defendant "John Doe" POLICE OFFICERS' affirmative conduct.

73.     The Defendant "John Doe" POLICE OFFICERS failed to intervene on Plaintiffs' behalf in order to prevent the violation of Plaintiffs' constitutional rights despite the Defendant "John Doe" POLICE OFFICERS' awareness that Plaintiffs rights were being violated.

74.     As a result of the aforementioned conduct of the individual defendants, Plaintiffs' constitutional rights were violated.

75.     As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION UNDER 42 U.S.C. § 1983

76.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

77.     At or around the time that Plaintiffs came into contact with the Defendant "John Doe" POLICE OFFICERS, Plaintiffs' had recently been and/or were currently engaging in protected speech or conduct, including but not limited to participating in a peaceful march in order to lawfully exercise their First Amendment protected rights.

78.     The Defendants took adverse action against Plaintiffs in order to punish them for engaging in protected speech and conduct.

**79.** The Defendants took adverse actions against Plaintiffs by using wrongful and unjustified force upon Plaintiffs.

**80.** The Defendants took adverse action against Plaintiffs by unlawfully arresting them.

**81.** The Defendants took adverse action against Plaintiffs by arresting them despite the absence of probable cause to do so.

**82.** The Defendants took adverse action against Plaintiffs by falsely accusing them of crimes and violations.

**83.** The Defendants took adverse action against Plaintiffs by taking them into Police custody and detaining them against their will.

**84.** Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken by the Defendants.

**85.** The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken against them by the Defendants was demonstrated by, among other things, the fact that one or more of the Defendant "John Doe" POLICE OFFICERS stated to Plaintiffs, in sum and substance that the Plaintiffs were being arrested because they were marching, at or around the time that the Defendant "John Doe" POLICE OFFICERS arrested Plaintiffs.

**86.** Plaintiffs were taken into police custody and detained against their will.

**87.** Defendants deprived Plaintiffs of their liberty in violation of both their civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution's First, Fourth, Fifth and Fourteenth Amendments and the

Constitution of the State of New York and in direct retaliation for their exercise of their

civil and constitutional rights of free speech, free expression, and expressive association.

88.     Defendants, collectively and individually, while acting under color of state

law, were directly and actively involved in violating the Plaintiffs' constitutional rights.

89.     As a result of the above constitutionally impermissible conduct, Plaintiffs

were caused to suffer loss of liberty, deprivation their freedom to peaceably assemble,

deprivation of their freedom of expression, violation of their civil rights, emotional

distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage

to their reputations and standings within their communities.

90.     As a result of Defendants' impermissible conduct, Plaintiffs were injured

and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of

money to be determined at trial.

## SIXTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983

91.     Plaintiffs repeat, reiterate, and re-allege each and every allegation

contained in the above paragraphs with the same force and effect as if fully set forth

herein.

92.     Defendant THE CITY OF NEW YORK has established policies and

customs pursuant to which the NYPD and its members, including the Defendant "John

Doe" POLICE OFFICERS, have violated the constitutional rights of the Plaintiffs.

93.     The Defendant "John Doe" POLICE OFFICERS, and Defendant THE

CITY OF NEW YORK, collectively and individually, while acting under color of state

law, engaged in Constitutionally-violative conduct that constituted a custom, usage,

practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

94.     The general approach of the NYPD to the Occupy Wall Street protests fits a paradigm named by scholars "the escalated force approach," which includes the following: limited concern for the protesters' speech and assembly rights; limited tolerance for community disruption; limited communication between police and demonstrators; extensive use of arrests to manage demonstrators; extensive use of force to control demonstrators; and surveillance of protesters, including infiltration and the use of informants.[1]  All of the forgoing tactics have been reported being implemented by the NYPD on multiple occasions in policing Occupy-related events, including the illegal mass arrests described herein.

95.      Particular policies and customs implemented by Defendant THE CITY OF NEW YORK which proximately caused violation of the Plaintiffs' Constitutional rights are these:

A.     The City of New York has a policy and practice of targeting participants in Occupy Wall Street activities for arrest without cause.

B.     The City of New York has a policy or practice of failing or neglecting to discipline officers that are guilty of misconduct, including wrongful arrests, perjury, and excessive force.

---

[1]     *See Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street,* The Global Justice Clinic (NYU School of Law) and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice (Fordham Law School) (2012).

C.  The City of New York has a policy and practice of engaging mass arrests of protestors without individualized probable cause for arrest.

D.  The City of New York has a policy and practice of arresting individuals selected at random from within groups engaging in peaceful protest, for the purpose of frightening and deterring the remainder of those protesting.

E.  The City of New York has a policy and practice of unlawful use of "trap and detain"/"trap and arrest" tactics, in which the police detain and numerous individuals by enclosing the area in which they are located, without permitting those individuals notice or opportunity to leave.

<u>THE CITY OF NEW YORK HAS A POLICY AND PRACTICE OF TARGETING PARTICIPANTS IN OCCUPY WALL STREET ACTIVITIES FOR ARREST WITHOUT CAUSE</u>

**96.**  According to *The New York Times*, as of June 18, 2012, over 2,500 participants in Occupy Wall Street activities had been arrested in Manhattan alone.  Upon information and belief, the vast majority of the cases were dismissed or otherwise resolved without criminal penalty.

**97.**  In other words, over the period of less than a year, Defendant THE CITY OF NEW YORK caused hundreds or thousands of protestors – who had committed no crime -- to be arrested.

**98.**  Upon information and belief, the NYPD's response to the Occupy movement follows mass arrest policies that were established at the time of the 2004

Republican convention, during which over 1,800 people were arrested, with more than 90 percent of the arrest cases being dismissed or ending with not-guilty verdicts.

99.     Upon information and belief, the police have been documented to have filed false criminal charges against others – not parties to this action -- who were arrested during the January 1, 2012 Occupy Wall Street march which is the subject of this action.

100.     Upon information and belief, in one such arrest Alexander Arbuckle was arrested on charges that he was standing in the street blocking traffic.  The arresting officer, Officer Elisheba Vera, swore to this version of events on the witness stand at trial.  However, photo and video evidence – including video taken by the NYPD's video unit – demonstrated that Arbuckle was on the sidewalk when he was arrested.  As the magazine *The Nation* reported: "As it turns out, Officer Elisheba Vera lied to the court." Arbuckle was found not guilty.

101.     Upon information and belief, Damien Treffs was a legal observer accompanying the January 1, 2012 march.  He was violently arrested without warning. The District Attorneys office declined to prosecute the case because probable cause was lacking for the arrest.

102.     Upon information and belief, police officers committed perjury in order to press charges against another protestor, Jessica Hall, who was arrested for blocking street traffic on November 17, 2011.  As *The Nation* reported, the truth exposed at her trial was quite different:  "During trial, Sergeant Michael Soldo told the court that he arrested Hall because she was blocking traffic.  But Soldo later admitted under cross-examination, and the NYPD's own video confirmed, that it was the NYPD metal barricades that prevented vehicles from passing."

**103.**     Upon information and belief, police lied to support the arrest of a protestor arrested at an Occupy-related protest on Sept. 19, 2011, The protestor was arrested for – according to NYPD spokesman Paul Browne – leaping over a police crowd-control barrier.  Video of the incident, however, showed that the arresting officers reached across the barrier and forcibly dragged the individual over it.

### THE CITY OF NEW YORK FAILS TO ADDRESS THE PROBLEM OF POLICE MISCONDUCT, INCLUDING WRONGFUL ARRESTS, PERJURY, AND EXCESSIVE FORCE

**104.**     Upon information and belief, neither Sergeant Michael Soldo nor Officer Elisheba Vera have been disciplined or punished in any way for their perjury, committed for the purpose of imposing criminal liability on an Occupy-affiliated protestor.

**105.**     Upon information and belief, this is consistent with the NYPD's long-standing policy of tolerating perjury if it helps increase the number of arrests and convictions by the NYPD.  After the Honorable Judge Jack B. Weinstein made a finding that police followed a custom or practice of lying under oath, Police Commissioner Raymond Kelly acknowledged to reporters that false testimony by police officers occurs. As reported by the Daily News on December 1, 2009, Kelly said: "When it happens it's not for personal gain.  It's more for convenience."

**106.**     Upon information and belief, Commissioner Kelly and the NYPD did not take any steps whatsoever to address the admitted custom of perjury.  By failing to address this unlawful custom when known, the custom became a policy of the NYPD.

**107.**     Upon information and belief, research published by the New York Civil Liberties Union similarly documented thousands of "plain view" marijuana arrests based

on false allegations by the arresting officers that the marijuana was in plain view in order to turn a non-criminal violation into a criminal misdemeanor.[2]

108.    Upon information and belief, in a story published on May 12, 2008, the New York Times documented at least 20 cases in federal court in which police provided false boilerplate testimony to justify searches and seizures of guns.  These cases represented only that small fraction of cases in which the boilerplate testimony could be challenged with more than the word of the defendant.[3]

109.    Upon information and belief, there have been numerous civil cases filed arising out of perjured criminal complaints.  See, e.g., McMillan v. City of New York, 04 Civ. 3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion); Avent v. City of New York, 04 Civ. 2451 (CBA) (CLP) (E.D.N.Y.) (same); Smith v. City of New York, 04 Civ. 1045 (RRM) (JMA) (E.D.N.Y.) (same).

110.    Upon information and belief, in one especially shocking case, a police officer was so troubled by the rampant illegality he observed by his colleagues, that he began to make audio recordings of his interactions with his peers and superiors at his precinct.  When he exposed the precinct's policies and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges, he was arrested and committed to a psychiatric facility in retaliation for exposing said

---

[2]     Levine, Harry G. and Deborah Peterson Small, Marijuana Arrest Crusade: Racial Bias and Police Policy in New York City 1997-2007, New York Civil Liberties Union, April 2008, p. 5.

[3]     Weiser, Benjamin, "Police in Gun Searches Face Disbelief in Court," May 12, 2008.

policies and practices to the press.  Schoolcraft v. City of New York, 10-CV-6005 (RWS) (S.D.N.Y.).

**111.**    Upon information and belief, several civil cases arising out of the arrests of protestors have also alleged perjured criminal complaints lodged against protestors prior to the Occupy movement, including:

- Long v. City of New York, 09 Civ. 9216 (AKH) (S.D.N.Y.) (officer purposefully swears out false complaint against protestor; perjury is discovered by means of video of the arrest taken by another protestor);

- Callaghan v. City of New York, 07 Civ. 9611 (PKC) (S.D.N.Y.) (officers accused of falsifying evidence and mass retaliatory arrests of bicyclists, not based upon individualized suspicion, engaged in expressive conduct, to wit, riding in Critical Mass bicycle rides after the 2004 Republican National Convention);

- Dunlop v. City of New York, 06 Civ. 0433 (RJS), 2008 U.S. Dist. LEXIS 38250 (S.D.N.Y.) (bystander arrested outside the 2004 Republican National Convention while observing arrests occurring in public; alleges that police destroyed exculpatory evidence by deleting portions of a video which contradict sworn criminal complaint);

- MacNamara v. City of New York, 04 Civ. 9216 (RJS) (JCF) (S.D.N.Y.) (evidence of perjured sworn statements systematically provided by officers to attempt to cover-up or justify unlawful mass arrests of approximately 1800 people, not based upon individualized suspicion).

**112.**    Upon information and belief, other cases have documented other forms of police misconduct directed against protestors, and tolerated or encouraged by the NYPD.

◆ Lin v. City of New York, 09 Civ. 1936 (PGG) (S.D.N.Y.) (officers arrest en

masse participants in a Critical Mass group bicycle ride, without individualized

suspicion, including arresting a person lawfully photographing an arrest of a

bicyclist in Times Square and a bystander after refusing an unlawful order to

produce identification);

◆ Corbin v. City of New York, 12-cv-02305 (PAC) (S.D.N.Y.) (police captain

personally engaged in extended surveillance of small group of lawful protestors,

eventually directing unlawful arrests of perceived leaders of group).

THE CITY OF NEW YORK HAS A POLICY AND PRACTICE OF ARRESTING
INDIVIDUALS SELECTED AT RANDOM FROM WITHIN GROUPS
ENGAGING IN PEACEFUL PROTEST, FOR THE PURPOSE OF FRIGHTENING
AND DETERRING THE REMAINDER OF THOSE PROTESTING.

113.    Upon information and belief, Defendant THE CITY OF NEW YORK has

implemented a policy pursuant to which individuals are selected at random for arrest

from within a group of protestors, in order to create fear in other protestors that they too

will be subject to arrest.  One feature of random arrests is that the police arrest certain

individuals who are engaging in lawful activity, and who are engaging in no legally

significant activity that is different from that of other individuals present at the same time

and place.  Upon information and belief, the purpose of this tactic is to deter protestors

from engaging in protest.  The tactic is effective because it creates confusion as to what

conduct the police consider lawful, and what conduct will subject the individual to arrest.

114.    Upon information and belief, this tactic actually achieves the desired result

of deterring other individuals from lawful participation in Occupy-related activities.

Arresting even a relatively small proportion of those lawfully engaging in a protest is an

effective deterrent. If the NYPD regularly arrested every 100th person entering Macy's,

people would very quickly stop going to Macy's.  Months and thousands of arrests after the Occupy Wall Street movement began, these abusive tactics have substantially impacted the size and frequency of events.

115.    Upon information and belief, as early as the third day of the Occupy Wall Street protests, NYPD officers were already observed to have been selecting individual protestors at random from a larger group and targeting those people for arrest.  At a protest on Sept. 19, 2011, journalists reported police penetrating a group of protestors to select a single individual for arrest.  The individual was later falsely reported to have leapt over a barricade by NYPD spokesman Paul Browne.

116.    Upon information and belief, two days later, one witness reported two random arrests at an Occupy-related protest at the corner of Broadway and Liberty streets on September 21, 2011.

117.    Upon information and belief, a reporter for the *Chronicle of Higher Education* documented the random arrest tactic being employed in the vicinity of Union Square on September 24, 2011: "In the same way that ocean trawlers capture indiscriminately, officers penned hundreds of peacefully marching Occupy Wall Street protesters together with bystanders, pedestrians, reporters, and neighborhood residents. Witnesses called police targeting of detainees 'random.'"  The same reporter wrote: "Many detainees were simply on their way from the nearby farmer's market or the Strand bookstore—or en route to one of the five subway lines intersecting in the area."

118.    Upon information and belief, a reporter for *The New York Times* reported that arrests of Occupy-affiliated protestors in the vicinity of the Brooklyn Bridge on October 1, 2011 appeared to be "random and aggressive."  ABC News similarly reported

"random" arrests taking place.  The following day, Mayor Michael R. Bloomberg ratified these tactics stating, "The police did exactly what they were supposed to do."

119.    Upon information and belief, on January 1, 2012, actress Ellen Barkin reported that she witnessed police forcibly arrest a woman near Union Square, who was simply walking in the vicinity of Occupy-affiliated protestors.

120.    Upon information and belief, one journalist described such random arrests occurring at Zuccotti Park on the night of February 28, 2012 in which several Occupy-affiliated citizens present in the park were arrested for no discernable reason, while others, equally innocent, were not.  The journalist recorded the police taunting these people.

121.    Upon information and belief, *The New York Times* reported that protestors engaged in peaceful and lawful protest were being randomly selected for arrest at an Occupy-related protest on March 17, 2012.

122.    Upon information and belief, a New York Times reporter described the police randomly selecting individual non-violent for arrest at an Occupy-related protest in the financial district that occurred on September 15, 2012.

123.    Upon information and belief, a reporter for *Gothamist.com* also reported random arrests during an Occupy-related march from Washington Square to Zuccotti Park on September 15, 2012, and identified such random arrests as a recognizable tactic consistently employed by the NYPD at Occupy-related protests: "NYPD officers in white shirts [were] throwing people into the sidewalk, and … police were singling protesters out, seemingly at random, to be arrested. The tactic is a hallmark of the NYPD's policing of Occupy Wall Street demonstrations, both large and small."

124.     Upon information and belief, a journalist for *The Atlantic*, reporting on a protest on September 17, 2012, made the same observation: "At times, police seemed to outnumber protesters, and some arrests during the protest seemed random: An officer would point out an individual in the crowd, and then a group [of officers] would rush in and grab the target."  A journalist who was himself arrested while covering this event reported: "NYPD was randomly grabbing people 3-5 at a time throughout the march."

### THE CITY OF NEW YORK HAS A POLICY AND PRACTICE OF UNLAWFUL TRAP AND DETAIN/TRAP AND ARREST TACTICS

125.     Defendant THE CITY OF NEW YORK and the NYPD maintain a policy, practice and/or custom of engaging in mass group arrests of protesters without particularized probable cause for the arrest of any individual within the mass of those arrested, using unlawful trap-and-arrest policing tactics.

126.     The NYPD's trap-and-arrest policing tactic involves the use of police lines against targeted protests in order to trap protesters and others, in the absence of warnings or orders calculated to reach those subject to arrest. As a generalized trap without warning, the tactic captures persons indiscriminately and without regard to the existence of particularized probable cause to arrest.

127.     Through the NYPD's trap-and-arrest tactic, police officers guide or escort demonstrators and exercise control over the conduct of the march in order to subsequently affect a mass arrest of the demonstrators involved.

128.     Though the NYPD's trap-and-arrest tactic, police officers exercise control over the conduct of the march through their physical presence; show of police force and authority; and through the issuance of orders and directives to individuals within the march.

**129.**     The NYPD's trap-and-arrest tactic neither provides those arrested with fair notice that they may be subject to arrest nor does it provide any opportunity to comply with any directive.  In short, persons conforming their conduct to the law cannot avoid being caught in a mass false arrest.  The trap-and-arrest tactic also frequently results in the arrest of bystanders.

**130.**     In the absence of particularized probable cause, mass arrests are random arrests writ large.

**131.**     Defendant THE CITY OF NEW YORK and the NYPD maintain a policy, practice and/or custom of tolerating and failing to discipline such unlawful police conduct.

**132.**     The actions of the Defendant "John Doe" POLICE OFFICERS in the present case were performed pursuant to the foregoing policy, practice and/or custom, and using the trap-and-arrest tactic.

**133.**     These mass false arrests of peaceful demonstrators were ordered, approved, and ratified by command staff and by NYPD policy makers.

**134.**     Defendant THE CITY OF NEW YORK has failed to adequately train or instruct the NYPD and its officers, including but not limited to the Defendant "John Doe" POLICE OFFICERS, so as to prevent the foreseeable violation of the clearly established rights of protesters.

**135.**     The existence of the aforementioned policy, practice and/or custom is demonstrated by the fact that it has been applied on several other recent occasions.

**136.**     Upon information and belief, near Union Square on September 24, 2011, mass arrest tactics were implemented using lines of police and/or orange plastic netting to

trap and arrest protestors and anyone else that happened to be in the vicinity.  One reporter for the *Chronicle of Higher Education* who witnessed the scene compared the trap and arrest process to "ocean trawlers" capturing people "indiscriminately."  A reporter for public television reported that some of those arrested were "bystanders who were snatched up while snapping souvenir photos."  One of those arrested was a worker at a University Place café who stepped outside to see what was happening.  The newspaper The Villager reported: "More than 80 people were arrested, including passersby and members of the press."  The same report noted: "As in their previous marches, the demonstrators were peaceful."  Nevertheless, several of those already corralled within plastic netting were pepper-sprayed by NYPD Deputy Inspector Anthony Bologna.  NYPD Commissioner Raymond Kelly later told the press that he was in the area at this time and observed the police activity occurring there.

**137.**    Upon information and belief, Commissioner Kelly's presence at this police activity indicated that he approved and condoned the police activity taking place, including performing mass arrests using the trap and arrest tactic.

**138.**    On October 1, 2011, an Occupy-related protest, accompanied by police, began to cross the Brooklyn Bridge from the Manhattan side by means of the pedestrian walkway.  As the pedestrian walkway filled with people, the police blocked the main entrance ramp to the eastbound lane of the bridge.  After blocking this ramp to both human and vehicular traffic for some time, the police stopped doing so, and the group of officers that blocked the ramp walked up onto the bridge span itself.  The marchers followed, believing that the police action indicated that the eastbound lane was now available for their use.  When the line of officers reached the approximate halfway point

of the bridge span, they stopped and directed the marchers not to continue.  The marchers

obeyed this directive.  The police did not permit those on the bridge to leave or otherwise

disperse and arrested approximately 700 of the marchers who had followed them onto the

bridge.  The following day, Mayor Michael R. Bloomberg ratified these tactics stating,

"The police did exactly what they were supposed to do."

      **139.**    On Nov. 15, 2011, NYPD officers converged on Zuccotti Park at 1AM

and arrested those present *en masse*, including several credentialed journalists who were

attempting to cover the story.

      **140.**    On November 30, 2011, a group of approximately 100 protestors were

detained on a sidewalk inside barricades for two hours, without being permitted to leave.

While this mass arrest resulted in no-one being taken into custody for further processing,

the protestors were not free to leave, and were under arrest while they were detained.

      **141.**    Mass arrests of protestors have been the consistent practice of Defendant

THE CITY OF NEW YORK and of the NYPD for many years.

      **142.**    On April 7, 2003, the NYPD conducted a mass arrest of demonstrators

who were standing on a midtown sidewalk during a protest against the invasion of Iraq.

Without warning, notice or cause, police surrounded the protesters as well as passers-by

who happened to be walking on the same sidewalk. Without giving a directive or

providing opportunity to disperse or comply with any directive the police

indiscriminately arrested everyone trapped within the police line cordon. Kunstler v. City

of New York, Civil Action No. 03-CV-02819-RWS, Southern District of New York

(filed February 11, 2004, terminated August 22, 2008).

**143.** Similarly, during the 2004 Republican National Convention in New York City. According to *The New York Times*, multiple instances of mass arrests occurred. 1,806 persons were arrested in connection with RNC protests, and according to the *Daily News*, "[c]harges were ultimately dropped against 90 percent of them."

**144.** Police Commissioner Kelly has explicitly ratified and defended the mass false arrests of the NYPD, even in response to a Civilian Complaint Review Board letter which sharply criticized police conduct in connection with two specific RNC mass arrests and which specifically recommended additional training for officers. Despite these complaints, Police Commissioner Kelly ratified the arrests stating, "[T]he implication that the N.Y.P.D. failed during the R.N.C. turns truth on its head." Police Commissioner Kelly further stated: "The policing of the R.N.C. was one of the Police Department's finest hours."

**145.** Upon information and belief, The New York Times reported that Police Commissioner Raymond Kelly stated (in relation to the 2004 Republican Convention protests) that the police are not obligated to give warnings before arrests.  Then and now, the practice of the NYPD is that officers may arrest peaceful marchers or protestors at any time.  The NYPD engages in such arrests even where – as in the present case – the police have accompanied a march and directed the course and direction of the march. Apart from the present case, on both September 24, 2011 and October 1, 2011, NYPD officers arrested tens or hundreds of people for marching under the direction of NYPD officers.

### THE FORGOING POLICIES WERE DESIGNED AND IMPLEMENTED AT THE HIGHEST COMMAND LEVELS OF THE NYPD

**146.**   Upon information and belief, the foregoing tactics are known and approved by decision-makers at the highest levels of the NYPD.  A report on police response to the Occupy movement was compiled by a joint project of *New York University Law School's Global Justice Clinic* and the *Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice*.  The report documented 130 specific incidents of police misconduct, including several of those mentioned above.  In a letter to the authors, NYPD Assistant Deputy Commissioner Thomas Doepfner, writing on behalf of the NYPD concerning the report, stated:  "It is our view, however, that the police actions that have been taken in connection with Occupy Wall Street activities have been lawful."

**147.**   Upon information and belief, Police Commissioner Raymond Kelly personally supervised the arrests that took place near Union Square on September 24, 2011.

**148.**   Upon information and belief, Police response to Occupy-related activity is coordinated at the highest levels on the NYPD.  NYPD executives above the level of precinct commanders controlled the policing of Occupy-related events, using borough task forces to do the job.

### THE CITY OF NEW YORK FAILS TO DISCIPLINE OFFICERS THAT ARE GUILTY OF MISCONDUCT, INCLUDING WRONGFUL ARRESTS, PERJURY, AND EXCESSIVE FORCE.

**149.**   Upon information and belief, while there are thousands of instances of police perjury in criminal complaints and court testimony placing citizens at risk of wrongful imprisonment and other penalties, Defendant THE CITY OF NEW YORK and

the NYPD have done nothing to systematically document the problem, and police are rarely or ever disciplined for the practice.  In fact, Commissioner Raymond Kelly excused and failed to correct such perjury.

150.    Upon information and belief, Defendant THE CITY OF NEW YORK and the NYPD have done nothing to systematically document the problem of excessive force or wrongful arrest.  Individual officers are almost never given meaningful discipline for infractions.

151.    Upon information and belief, the NYPD takes no disciplinary action whatsoever against nearly 30% of officers named in substantiated CCRB complaints, and gave only "instructions" to nearly a third of officers who were disciplined following substantiated CCRB complaints between 2000 and 2005.

152.    Both Raymond Kelly and Mayor Bloomberg have explicitly praised and ratified the tactics, including mass arrests without particularized probable cause, engaged in by the NYPD.

153.    The tactics of mass arrests without particularized probable cause, random arrests, perjury for the purposes of supporting arrests and/or criminal complaints are so widespread and of such long duration, and so many thousands of individual officers and citizens have been implicated or affected, that Defendant THE CITY OF NEW YORK must be presumed to be aware of them and to have condoned or promulgated those practices.

154.    As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer loss of liberty, deprivation their freedom to peaceably assemble, deprivation of their freedom of expression, violation of their civil rights, emotional

distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to their reputations and standings within their communities.

155.    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

## FALSE IMPRISONMENT AND ARREST UNDER NEW YORK STATE LAW

_____

156.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

157.    As a result of the aforesaid conduct by Defendant THE CITY OF NEW YORK and the Defendant "John Doe" POLICE OFFICERS, Plaintiffs were unlawfully detained and confined.

158.    The Defendant "John Doe" POLICE OFFICERS —— in performance of their duties with powers and authorities designated upon then by Defendant THE CITY OF NEW YORK —— intentionally confined Plaintiffs.

159.    Plaintiffs were at all times consciously aware of their confinement by the Defendant "John Doe" POLICE OFFICERS.

160.    At no point throughout Plaintiffs' unlawful detention and confinement by the Defendant "John Doe" POLICE OFFICERS did Plaintiffs consent to said confinement.

**161.**    At no point throughout Plaintiffs' unlawful detention and confinement by the Defendant "John Doe" POLICE OFFICERS were the actions of the Defendant "John Doe" POLICE OFFICERS otherwise privileged.

**162.**    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

<u>**EIGHTH CLAIM FOR RELIEF**</u>

<u>**BATTERY UNDER NEW YORK STATE LAW**</u><br><u>**AGAINST THE DEFENDANT "JOHN DOE" POLICE OFFICERS**</u>

---

**163.**    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**164.**    The Defendant "John Doe" Police Officers committed battery upon Plaintiffs in their acts of making bodily contact with Plaintiffs by handcuffing them in the absence of probable cause to arrest.

**165.**    The Defendant "John Doe" Police Officers performed these acts of making bodily contact with Plaintiffs with the intent to do so.

**166.**    The Defendant "John Doe" Police Officers' acts of making bodily contact with Plaintiffs were subjectively offensive in nature to Plaintiffs.

**167.**    The Defendant "John Doe" Police Officers' acts of making bodily contact with Plaintiffs would be objectively offensive in nature to a reasonable person aware of the circumstances of Plaintiffs' arrests.

**168.**    The Defendant "John Doe" Police Officers performed these acts of

making bodily contact with Plaintiffs without privilege or consent from Plaintiffs.

**169.**    As a result of the Defendant "John Doe" POLICE OFFICERS' conduct,

Plaintiffs suffered emotional distress, anguish, anxiety, fear, humiliation, loss of freedom,

legal expenses and damage to their reputations and standings within their communities.

**170.**    As a result of the Defendant "John Doe" POLICE OFFICERS' conduct,

Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against

Defendants in a sum of money to be determined at trial.

## NINTH CLAIM FOR RELIEF

## DEPRIVATION OF PLAINTIFFS' RIGHTS AS GUARANTEED BY THE NEW YORK STATE CONSTITUTION

**171.**    Plaintiffs repeat, reiterate, and re-allege each and every allegation

contained in the above paragraphs with the same force and effect as if fully set forth

herein.

**172.**    As a result of the aforesaid conduct of Defendant THE CITY OF NEW

YORK and the Defendant "John Doe" POLICE OFFICERS, Plaintiffs were deprived of

rights guaranteed to them by the New York State Constitution, including though not

limited to:

> A.    The right of the people to freely speak their sentiments on all subjects as described in Article I §8 of the New York State Constitution.

> B.    The right of the people to peaceably assemble to petition the government, or any department thereof as described in Article I §9 Subsection 1 of the New York State Constitution.

> C.    The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures as

described in Article I §12 of the New York State Constitution.

**173.**    The acts complained of were carried out by the Defendant "John Doe" POLICE OFFICERS in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the NYPD.

**174.**    The Defendant "John Doe" POLICE OFFICERS and Defendant THE CITY OF NEW YORK, collectively and individually, while acting under color of state law violated Plaintiffs' constitutional rights by engaging in conduct proscribed by the New York State Constitution.

**175.**    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## TENTH CLAIM FOR RELIEF

### NEGLIGENCE UNDER NEW YORK STATE LAW AGAINST DEFENDANT THE CITY OF NEW YORK

**176.**    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**177.**    Defendant THE CITY OF NEW YORK was negligent in the hiring and retention of the Defendant "John Doe" POLICE OFFICERS as follows:

A.    Upon information and belief, Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant "John Doe" POLICE OFFICERS who conducted

and participated in the acts of subjecting Plaintiffs to battery, excessive force, and violations of their constitutional rights in the manners described herein.

    B.    Defendant THE CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the aforesaid Defendant "John Doe" POLICE OFFICERS to engage in the wrongful conduct heretofore alleged in this complaint.

    **178.**    Defendant THE CITY OF NEW YORK was negligent in the training and supervision of the Defendant "John Doe" POLICE OFFICERS as follows:

    A.    Defendant THE CITY OF NEW YORK knew or should have known that the requirements, guidelines, and terms of its training for the Defendant "John Doe" POLICE OFFICERS were insufficient and inadequate to prevent the Defendant "John Doe" POLICE OFFICERS from engaging in the wrongful conduct heretofore alleged in this complaint.

    **179.**    Defendant THE CITY OF NEW YORK is also liable to Plaintiffs on the basis of *respondeat superior* as a result of the constitutionally-impermissible actions of the Defendant "John Doe" POLICE OFFICERS as described herein.

    **180.**    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF

### *RESPONDEAT SUPERIOR* UNDER NEW YORK STATE LAW AGAINST DEFENDANT THE CITY OF NEW YORK

**181.**    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**182.**    The police officers that detained and arrested the plaintiffs, and who committed the other wrongs against the plaintiffs described herein, whether named individual herein or not, were employees of Defendant THE CITY OF NEW YORK.

**183.**    At all relevant times, these police officers were acting within the scope of their employment and on behalf of  Defendant THE CITY OF NEW YORK.

**184.**    Defendant THE CITY OF NEW YORK is responsible for the torts of these police officers, and for the consequences of their actions generally, under the theory of *respondeat superior.*

**185.**    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.  Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory damages.

[c] Award punitive damages against the individual Defendants.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be proper and in the interests of justice.

DATED:        New York, New York
              November 13, 2012

                                    Respectfully submitted,


                                    _____~/s/~_____
                                    DAVID A. THOMPSON, ESQ.
                                    Stecklow Cohen & Thompson
                                    10 SPRING STREET – SUITE 1
                                    New York, New York 10012
                                    [212] 566-8000
                                    [212] 202-4952/FAX
                                    ATTORNEY FOR PLAINTIFFS