db6npeac                          Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JENNIFER PEAT, ET AL.,

        Plaintiffs,

        v.                        12 CV 8230 (SAS)

THE CITY OF NEW YORK CITY, ET AL.,

        Defendants.

------------------------------x

                                New York, N.Y.
                                November 6, 2013
                                4:00 p.m.

Before:

                 HON. SHIRA A. SCHEINDLIN

                                  District Judge

                    APPEARANCES

STECKLOW, COHEN & THOMPSON
     Attorneys for Plaintiffs
BY:  DAVID A. THOMPSON
     WYLIE M. STECKLOW

NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
     Attorneys for Defendants
BY:  DARA L. WEISS
     ANDREW LUCAS
     JOY ANAKHU

1                    (In open court)

2                    (Case called)

3               THE COURT:  To be perfectly honest I forgot that I
called this in nor do I have it on my calendar.  When did I set
this time and date?

6               MR. THOMPSON:  I believe we got the schedule notice
approximately two weeks ago, and my assumption was that it was
primarily to catch up with scheduling, and we revised the
scheduling order to reflect things that were covered at the
last conference.

11              THE COURT:  You said you got the scheduling order two
weeks ago?

13              MR. THOMPSON:  We received an e-mail from ECF
notifying us that this conference had been scheduled
approximately two weeks ago by my recollection.

16              THE COURT:  I still have no recollection.  If you want
to hand up your proposed schedule, I'll look at it.

18              Didn't we recently have a schedule we discussed

19              MR. STECKLOW:  There was a discovery hearing.  You
sent us back.  It made sense to us that this was to now
summarize what we had all agreed upon from that conference.

22              THE COURT:  Maybe so.  It's beginning to ring a bell.

23              Do you expect to really have experts?

24              MR. LUCAS:  Your Honor, we believe that we may have an
expert on police practices, particularly in relation to

1    qualified immunity issues.
2              THE COURT:  All the parties seem to agree that
3    discovery can be completed by March 17.  That seemed to be an
4    agreed upon date.
5              MR. LUCAS:  That was the date that we discussed last
6    time.
7              THE COURT:  It says here you are going to be
8    completing all depositions including nonparties by January 31,
9    right?  That's what it says here.
10             MR. LUCAS:  There is some concern.  We wanted to be
11   finished, at least try for a date ahead of the close of
12   discovery.  I think some additional time past that might be
13   necessary to say the end of February.
14             THE COURT:  For what?
15             MR. LUCAS:  Simply because of the number of
16   depositions.
17             THE COURT:  So you actually think you can complete
18   depositions not at the end of January but at the end of
19   February?
20             MR. LUCAS:  Yes, your Honor.  I am certain about that
21   date.
22             THE COURT:  Do you think it's going to take until
23   February 28?  I guess there are a lot of depositions here.  I
24   am a little lost.  The automatic disclosures are done, the
25   document disclosures are they done, and the document requests

1 and responses?
2     MR. THOMPSON:  Both sides have submitted their first
3 requests for documents.  Those have been responded to.  There
4 is still some, I guess, questions being resolved between
5 counsel as to the completeness of responses.  Plaintiffs
6 submitted a second set of document demands in September and we
7 do contemplate submitting perhaps one more set of document
8 demands focused on Monell discovery before the close of
9 discovery.
10     THE COURT:  When do you expect to begin deposition?
11     MR. THOMPSON:  We have already begun depositions, your
12 Honor.
13     THE COURT:  You have.  How many people have been
14 deposed so far.
15     MR. THOMPSON:  I believe the number would be six or
16 seven.
17     MR. LUCAS:  Six, seven, or eight.
18     THE COURT:  Depositions have already been taken?
19     MR. THOMPSON:  Yes.
20     THE COURT:  Are those the named plaintiffs?
21     MR. THOMPSON:  Some of the named plaintiffs have been
22 deposed; some of the named defendants have been deposed.
23     THE COURT:  It seems like you are well beyond the
24 presumptive limit of ten per side even the way you propose it
25 in this order.

1     The defendants say they want to take 12 named
2  plaintiffs as well as between six and fifteen nonparties.
3  That's closing in on 30 depositions for one side, and the
4  plaintiffs say they want up to eight arresting officers and up
5  to ten supervising officers, which is taking it to 18.  So
6  combined you want to take 42 depositions in this case?  That
7  really seems extreme.
8     MR. THOMPSON:  Well, I can't speak for the defendants.
9     THE COURT:  Right.
10     MR. THOMPSON:  We have had trouble getting the right
11  people to depose.
12     The initial arresting officers that we deposed let us
13  know that these were turnover arrests, which is a situation
14  where the person who processes the arrest doesn't really have
15  any direct knowledge of what happened.
16     THE COURT:  Right.
17     MR. THOMPSON:  So we deposed the formal arresting
18  officer only to find that person didn't really know anything.
19  There have been some issues discovering who was present and
20  even who were the supervising officers.  We're certainly
21  willing to streamline or reduce the number of total
22  depositions.  We just had hoped there would be some parity
23  between the two sides on that.
24     MR. LUCAS:  Your Honor, from defendants' perspective,
25  certainly we hope to reduce that number as well, but we do

1   believe that the 12 parties we would need to depose.

2              THE COURT: At first glance one thinks so, but one

3   doesn't really need to depose every named plaintiff and then 15

4   nonparties. It does get repetitive.

5              Rather than interfere with that I am going to extend

6   the date for the cutoff of depositions to February 28, 2014, by

7   the one month you asked.

8              By the same token, that's the close of fact discovery.

9   There is no need to go to March 17, and I am also going to put

10  that down as a date that will not be extended again. So I am

11  going to put down right on the order no further extensions. So

12  you have really got to schedule all these depositions for both

13  sides to get them done by the end of February.

14             Then you should come in and we can have a conference

15  just after the close of depositions at the end of February. So

16  we would have a conference in early March to see if there is a

17  motion or we are heading towards scheduling the trial. Have I

18  sent this case already to one of the magistrate judges or the

19  mediation program for a settlement offer? Which did I do?

20             MR. THOMPSON: We did with Magistrate Pitman.

21             THE COURT: It's already been sent? So far it hasn't

22  settled but you always can call him again?

23             MR. THOMPSON: Correct.

24             THE COURT: As long as you have a place to go should

25  you want to talk. Let me look at March.

1            How about Thursday, March 13, for a final pretrial

2     conference/premotion conference, which means that if the

3     defense wants to make a motion they have to start the process

4     through the three-page letter writing procedure that is in my

5     individual rules.  I assume you are familiar with it,

6     Mr. Lucas, or you can find it.

7            MR. LUCAS:  Yes, your Honor.

8            THE COURT:  I think it's like seven days in advance of

9     the conference you write, and three days or four days in

10    advance you write, both sides write three-page letters

11    explaining the motion, and that's what we discuss.  If there is

12    no motion, that's fine, too.  Then we will use that conference

13    to talk about a trial date and the close of expert discovery

14    and the joint pretrial order.  I am going to write down March

15    13 at 4:30 for that purpose.

16           At that time, depending on whether there is a motion,

17    I can always adjust the submission of the pretrial order.

18           So, with that, is there anything further today?

19           MR. THOMPSON:  I had one question.

20           THE COURT:  OK.

21           MR. THOMPSON:  Really a clarification of some of the

22    issues we discussed last time.

23           THE COURT:  Yes.

24           MR. THOMPSON:  Just to refresh your memory, in this

25    case there was a gathering down at Zuccotti Park starting at

1   about 10 through about 1 a.m.  These plaintiffs were arrested
2   at Second Avenue and 13th Street at the little after 3 a.m.
3   Based on the discussion or your Honor's statements on
4   the record last time, it appears that the scope of discovery is
5   going to be focused on the site of the arrest and not on the
6   matters that happened at Zuccotti Park.
7   THE COURT:  What's the relevance of what happened in
8   Zuccotti Park if these people were arrested or interdicted for
9   the first time in a completely different area?  What does it
10  matter what happened at Zuccotti Park?
11  MR. THOMPSON:  Your Honor, our position is that the
12  focus the case is properly at the site of the arrest.  But I
13  really wanted know where I stand in terms of what we are doing.
14  THE COURT:  If it's not relevant, it's not
15  discoverable.  There is a definition of relevance in the rules,
16  relevant to the claims or defenses.  Is what happened in
17  Zuccotti Park relevant to your claims?
18  MR. THOMPSON:  We are not making a claim on that
19  basis.
20  THE COURT:  So your understanding is it is limited to
21  the site of the arrest.  Is that different for you, Mr. Lucas?
22  Is it relevant to a defense?
23  MR. LUCAS:  Well, it does give me some pause.  One of
24  the things we had been seeking was social media for instance,
25  communications from the plaintiffs.

1    THE COURT:  Right.  Of what?  Every social media
2 posting in the last five years or the next five years?  There
3 has to be a limit to that, too.  What do you want?
4    MR. LUCAS:  Certainly not.  I believe what we
5 discussed from was that from evening, but that was to include
6 Zuccotti Park, which was the site of what I think we can agree
7 was a very rowdy, arguably a riot, leading to a very rowdy and
8 tumultuous march, which ended in this arrest.
9    THE COURT:  If somebody posted something on their
10 Facebook page while in Zuccotti Park, let's say half hour
11 before the arrest, why is that relevant to what happened a half
12 hour later at a different location?
13    MR. LUCAS:  I think it goes to show motive, lack of
14 intent.
15    THE COURT:  Motive for what?  For the police make a
16 stop a half hour later at a different location?
17    MR. LUCAS:  Not for the police, but for the
18 individuals themselves, your Honor.  For their actions, their
19 actual actions that night.
20    THE COURT:  You can't be arrested for your motive a
21 half hour earlier.  I don't understand that.  Unless their
22 behavior was observed by a police officer and the police
23 officer at that moment had probable cause for an arrest or just
24 waited until the person was in a different location to effect
25 that arrest.  I can't imagine that the posting that person

might have put on a Facebook page unbeknownst to the officer could have affected that person's motive to commit some crime that was committed a half hour later.

These are arrests. The arrests have to be on probable cause. So at the time the officer made the arrest, the officer must have had probable cause for the arrest. I don't know what the probable case, but there must have been something in that officer's mind. Unless he observed something giving rise to probable cause in Zuccotti Park which had nothing to do with the posting anyway, the motive of the person a half before, unbeknownst to the officer, would not give him probable cause.

MR. LUCAS: Your Honor -- I apologize.

THE COURT: I'm done.

MR. LUCAS: I have I think two main points in response. The first is it also goes to honesty in many of these cases. The second goes to the actual conduct of the plaintiffs, which certainly impactive the lawfulness of their arrest.

I think a prime example is one of the individuals who we have already deposed who claims that he was not engaged in any illegal conduct at Zuccotti Park, but we have him on camera knocking over barricades and trying to take them away from officers as part of that riot.

THE COURT: It's actually kind of interesting, know. If the officer didn't observe that and no one knew of it, and

1    let's say it is a videotape you find a week later, I wouldn't

2    think at the time of the arrest the officer had probable cause

3    if he didn't know about any criminal conduct.

4              Think about that, your own statement.  Let's say there

5    is a continual video feed, and it turns out after the fact that

6    the video shows something, but no one knew it because it is a

7    different location at a different time.  At the time the

8    officer made the arrest did he have probable cause?  Did he

9    know?

10             MR. LUCAS:  Your Honor, I think regardless it goes to

11   veracity.

12             THE COURT:  That's your best argument.  That's your

13   best argument.  If the person has said something under oath

14   that conflicts with something he or she said on the Facebook

15   posting -- I was using Facebook as an example -- I suppose that

16   theoretically has some impeachment value, could have some

17   impeachment value and might go to credibility.  That's the one

18   argument I see.  I don't think it can affect the officer's

19   determination of probable cause if the officer had no knowledge

20   of it and didn't observe it.

21             So I don't think that is the relevance.  The relevance

22   is at best for impeachment purposes.

23             MR. LUCAS:  Your Honor, can we still rely upon your

24   decisions and your rulings regarding social media in our last

25   meeting?

1           THE COURT:  Which was what?

2           MR. LUCAS:  I don't have the transcript before me, but

3    it was for the plaintiff to produce affidavits and information

4    for that evening.

5           THE COURT:  The plaintiff to produce affidavits and

6    what?

7           MR. LUCAS:  Affidavits regarding what social media and

8    what statements they did make that evening?

9           THE COURT:  Right.  I still would like to know what

10   social media, if any, they used that night and during what time

11   period.  Maybe not produce the content yet.  So that if there

12   is content some of them may say, I never used any social media.

13   I don't know how that would be me.  But anyway some of them may

14   have never used it.  That's the end of them.

15          But the ones who did use it, if they gave you the

16   sites they used and the hours they used it that night, that

17   might mean that I would then call for production of any

18   communications in camera so that I could assess whether there

19   is any relevance.

20          The material should still be preserved.  That I

21   probably said the last time.  It still should be preserved.

22   And, yes, there should still be an affidavit whether it was

23   used that night and from what time until what time.  But the

24   content need not be produced at this time because I can't

25   assess the relevance at this time.  It's a pretty limited

1    relevance.  I think the best is what you said about
2    credibility.
3         MR. THOMPSON:  Your Honor, if I may be heard very
4    briefly.  My concern is twofold.  Normally, impeachment is not
5    a reason to expand the scope of discovery.
6         THE COURT:  I'm not expanding any scope of discovery.
7    I have already ordered that they preserve any social media that
8    they used that evening.  They may indeed have used some at the
9    site of the arrest, which would actually indicate what conduct
10   they were engaged in not in Zuccotti Park but at the site of
11   the arrest.
12        It depends.  People can be tweeting continually.  I
13   don't know they can think and tweet at the same time, but they
14   can.  So they may have started to do that in Zuccotti Park and
15   then did it on the march and did it continually.  They may have
16   sent photos of themselves doing it.
17        I have no idea what is on this.  We may be having a
18   theoretical discussion, because maybe some of them were too
19   busy to come anywhere near social media in the hour or two or
20   three under discussion.  I think you need to question each of
21   your 12 named plaintiffs.  And they can preserve it
22        MR. THOMPSON:  We are doing that.
23        THE COURT:  And they can prepare an affidavit whether
24   they used any, and, if so, which ones and during what period of
25   time.  Then I can worry about relevance.  That clarification

db6npeac　　　　　　　　　　Conference

1　has been given.
2　　　　　　　What else?  Nothing else?
3　　　　　　　MR. THOMPSON:  That's it, your Honor.
4　　　　　　　THE COURT:  OK.  Thank you.
5　　　　　　　(Adjourned)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25